UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JIMMIE POWELL,

                      Plaintiff,

    v.

C/O DALY, C/O LOCKMAN, C/O DIORIO,
VISITING INTAKE C/O JOHN DOE A,
VISITING ROOM CLERK C/O JOHN DOE
B, and C/O JOHN DOE C,

                      Defendants.

-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

20-CV-1194 (GRB) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      Presently before the Court is Defendants' Motion for Summary Judgement at Electronic Case File Number ("ECF No.") 45, Plaintiff's Response at ECF No. 51, and Defendants' Reply at ECF No. 52. The Motion for Summary Judgment was referred to the assigned Magistrate Judge for a Report and Recommendation by District Judge Gary R. Brown. June 6, 2022 Order.[1] The undersigned respectfully recommends that Defendants' Motion for Summary Judgment be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff Jimmie Powell ("Powell") commenced this action *pro se* on March 2, 2020, pursuant to 42 U.S.C. § 1983. ECF No. 1. While in custody at the Nassau County Correctional Center ("NCCC") in East Meadow, New York, Plaintiff alleges violation of his rights due to the

---

[1] On June 7, 2022, this case was randomly reassigned from Magistrate Judge James M. Wicks to the undersigned. June 7, 2022 Order.

deliberate indifference by Defendants in connection with an inmate-on-inmate assault and excessive force by NCCC corrections officers in response to the assault. ECF No. 12. On December 14, 2022, Defendants filed the present Motion for Summary Judgment with the Court. ECF No. 45. Plaintiff filed his opposition on January 23, 2023, and Defendants filed their reply on February 6, 2023. ECF Nos. 51 & 52.

### A. Background[2]

Plaintiff was admitted to the NCCC on October 24, 2019. ECF No. 47 ¶ 2. Upon his admission, he was given a copy of the Nassau County Correctional Center Rules & Regulations ("the Inmate Handbook"), and he acknowledged receipt. *Id.* ¶ 19; ECF No. 46-5. The Inmate Handbook outlines the procedures for filing inmate grievances at the NCCC. ECF No. 47 ¶ 20.

On December 20, 2019, Plaintiff met with his wife in the visiting room of the NCCC. *Id.* ¶ 4. Plaintiff was escorted into the NCCC visiting room and was placed in a seat directly behind another inmate, Jermaine Grant. *Id.* At the time, there was a "keep separate order" in place between Plaintiff and Grant. ECF No. 46-11 ¶ 5; ECF No. 46-3 at 23 (NC 000059). However, none of the Defendants were aware that Plaintiff and Grant were to be kept separate from each other. ECF No. 47 ¶ 5. Plaintiff also was unaware of this "keep separate order" at that time. ECF No. 12 at 4.

---

[2] The Court relies upon the following facts as set forth in Defendants' Rule 56.1 Statement of Facts (ECF No. 47), and the parties' affidavits and exhibits. The Court construes the facts in the light most favorable to Plaintiff, the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). The Court further notes that Plaintiff did not submit a Rule 56.1 Statement of Facts, in violation of Local Civil Rule 56.1. He mostly relies upon his complaints and other filings. It appears that, although Defendants included the "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" with their motion, Plaintiff failed to submit any other evidence. However, given Plaintiff's *pro se* status, "the Court will overlook this defect and will deem admitted only those facts in Defendants' Rule 56.1 Statement that are supported by admissible evidence and not controverted by other admissible evidence in the record." *Angulo v. Nassau Cnty.*, 89 F. Supp. 3d 541, 546 (E.D.N.Y. 2015) (citing *Jessamy v. City of New Rochelle*, 292 F.Supp.2d 498, 504 (S.D.N.Y. 2003)).

Notably, there was video surveillance in the NCCC visiting room that shows what transpired on December 20, 2019. ECF No. 46-7. At approximately 1:37 p.m., Grant engaged in an altercation with Plaintiff. ECF No. 47 ¶ 6. Grant and Plaintiff began to tussle and fell to the floor. *Id.* ¶ 7. Defendant Officers DiIorio, Donahue, and Daly, responded to the scene and issued verbal commands for both inmates to stop. *Id.* ¶ 8-13. When the altercation continued, the Officers physically separated Grant and Plaintiff. *Id.* ¶ 9. Officer DiIorio used control holds on Plaintiff's left arm to gain control over him. *Id.* ¶¶ 10-12. Officer Daly employed a one-second spray of Oleoresin Capsicum ("OC")[3] on Plaintiff. *Id.* ¶ 12. The entire incident in the NCCC visiting room involving Plaintiff, Grant and Defendants lasted approximately two minutes. ECF No. 48 at 2-3.

Almost immediately after this altercation in the visiting room, Plaintiff was evaluated by medical staff at approximately 1:50 p.m. on the same day. ECF No. 47 ¶ 13; ECF No. 50 at 4. Plaintiff complained to medical staff of pain in his right shoulder and redness in both eyes. ECF No. 47 ¶ 14. The eye redness was attributed to the OC spray. *Id.* Medical staff treated Plaintiff for eye redness with an initial decontamination process using a "cool-it" spray and then later a complete decontamination. *Id.* ¶ 15. Thereafter, medical staff performed a physical examination of Plaintiff's shoulder. *Id.* ¶¶ 16-18. The examination and follow up x-rays did not reveal a shoulder injury. *Id.* Plaintiff attributed his shoulder pain to the altercation with Grant. *Id.*

**B. Inmate Grievance Process**

On or about January 6, 2020, Plaintiff filed a grievance through the NCCC Inmate Grievance Procedure (Grievance No. 027-01-20). ECF No. 47 ¶ 21; ECF No. 46-3 at 19-20 (NC

---

[3] The Court takes judicial notice that OC Spray, or pepper spray, is an inflammatory agent used to temporarily impair vision. In this case, it was utilized on Plaintiff by officers to "gain control of the situation." ECF No. 46-9 at 4.

3

000055-56). Plaintiff asserted that the December 20, 2019 altercation between him and Grant resulted from NCCC's failure to protect and abide by the "keep separate order" in his file. ECF No. 46-3 at 19-20. As a result of this altercation, Plaintiff asserts that his visiting privileges were changed from "contact visits" to "booth visits."[4] *Id*. In the same form, Plaintiff requests his "regular visits (contact visits) back A.S.A.P. because this is playing a major emotional burden on my wife and family." *Id*. He also noted the failure to comply with the keep separate log was a "direct failure to protect." *Id*. In response, the NCCC Grievance Investigator determined that Plaintiff would remain on "booth visits" until his first thirty-day review by the facility's Chief Administrative Officer ("CAO") on January 20, 2020. *Id*. at 17. According to Defendants, Plaintiff refused to acknowledge receipt of the Grievance Investigator's decision and did not appeal this decision to the CAO of the NCCC. *Id*. at 18. Although Plaintiff claims the outcome of this grievance was "never" reported to him (ECF No. 51 at 2-3), Defendants note that the grievance form evidences that he was served with the Grievance Investigator's decision and "refused to sign" it. ECF No. 46-3 at 18 (NC 000054). Subsequently, Plaintiff did not appeal the decision on his grievance to the New York State Commissions of Corrections. ECF No. 47 ¶ 26.

Plaintiff also filed an additional grievance that arguably relates to this incident on February 10, 2020. ECF No. 46-3 at 13 (NC 000049). He again challenged the booth visit requirement, but did not address the altercation with Grant. *Id*. The investigator recommended that the booth visit restriction be lifted. *Id*. Plaintiff signed and accepted this grievance form. *Id*.

---

[4] The Court takes judicial notice that booth visits include a barrier physically separating the inmate from the visitor, whereas a contact visit is a visiting method in which inmates are not totally separated from visitors. Michael B. Mushlin, *Contact visiting*, 3 Rights of Prisoners § 13:15 (5th ed.) (Oct. 2022).

4

### C. Procedural History

On March 2, 2020, Plaintiff filed his first complaint in this action against Sheriff Vera Flood regarding the December 20, 2019 altercation in the NCCC and his subsequent injuries. ECF No. 1.  Plaintiff later filed an amended complaint on January 26, 2021.  ECF No. 12.  The amended complaint added claims against defendants "Visiting Intake C/O John Doe A, Visiting Room Clerk C/O John Doe B, C/O Daly, C/O Lockman,[5] C/O Diorio, [and] C/O John Doe C" and dropped Sheriff Flood as a defendant.  *Id.*  The amended complaint similarly brings claims as a result of the December 20, 2019 incident.  *Id.*  Defendants filed their amended answer with the Court on April 8, 2021.  ECF No. 17.

On December 14, 2022, Defendants filed their Motion for Summary Judgment with their accompanying Affidavit/Declaration in Support, Rule 56.1 Statement, and Memorandum in Support.[6]  ECF Nos. 45-48.  Defendants primarily argue that this lawsuit is barred by the Prison Litigation Reform Act, that Plaintiff has not attributed any specific conduct to the named Defendants, and that the Defendants were not deliberately indifferent to Plaintiff.  ECF No. 48.  Plaintiff responded on January 23, 2023, arguing that he complied with the Prison Litigation Reform Act, he was not able to obtain sufficient information regarding Defendants, and Defendants were deliberately indifferent.  ECF No. 51.  On February 6, 2023, Defendants filed their Reply to Plaintiff's Response.  ECF No. 52.

---

[5] Defendants assert that Lockman was not involved in the December 20, 2019 incident. ECF No. 47 ¶ 27.

[6] On May 31, 2022, Defendants filed a letter motion for a pre-motion conference for their proposed summary judgment motion.  ECF No. 31.  Judge Brown later referred that letter motion, as well the summary judgment motion itself, to the assigned Magistrate Judge.  June 6, 2022 Order.  The undersigned subsequently granted the pre-motion conference request and issued a schedule for the pending summary judgment motion which is the subject of this Report and Recommendation.  September 15, 2022 Order; ECF 40.

## II.     STANDARD OF REVIEW

### A.  Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.,* 841 F.3d 155, 162 (2d Cir. 2016).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *see also Wright v. Goord*, 554 F. 3d 255, 266 (2d Cir. 2009).

### B.  *Pro Se* Plaintiff

Given that Mr. Powell is proceeding *pro se*, the Court is "mindful that a *pro se* party's pleadings must be 'liberally construed' in favor of that party and are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).  However, "[p]roceeding *pro se* does not otherwise

6

relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002).

### C.  42 U.S.C. § 1983

Plaintiff asserts claims under 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  For a successful § 1983 claim, a plaintiff must establish that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999).  Furthermore, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 299 (2d Cir. 2004).

### D.  Deliberate Indifference

Finally, given that Plaintiff was a pre-trial detainee, his deliberate indifference claims are analyzed under the Fourteenth Amendment of the United States Constitution.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  In *Darnell*, the Second Circuit explained:

> A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions. . . .  This means that a pretrial detainee must satisfy two prongs to prove a claim, an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a "subjective prong"—perhaps better classified as a "*mens rea* prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions. The reason that the term "subjective prong" might be a misleading description is that, as discussed below, the Supreme Court has instructed that "deliberate indifference" roughly means "recklessness," but "recklessness" can be defined

7

> subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known). *See Farmer v. Brennan*, 511 U.S. 825, 836–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Id.* Additionally, the Court held that the *mens rea* prong would need to show proof greater than mere negligence to violate § 1983. *Id.* at 36.

### III. DISCUSSION

Defendants argue that summary judgment is warranted, because Plaintiff failed to (1) exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, (2) properly identify specific Defendants, and (3) establish Defendants were deliberately indifferent. As discussed herein, the Court agrees that Plaintiff failed to exhaust his administrative remedies and Defendants are entitled to summary judgment.

#### A. Failure to Exhaust Administrative Remedies

##### 1. Exhaustion

The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); *see Ross v. Blake,* 578 U.S. 632 (2016); *Duchnowski v. Armor Correctional Health, Inc.*, No. 17-CV-6214 (GRB)(ARL), 2023 WL 2390544, at *2 (E.D.N.Y. March 7, 2023).

The Supreme Court has held failure to exhaust administrative remedies under the PLRA as an affirmative defense. *Jones v. Bock,* 549 U.S. 199 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

Proper exhaustion of administrative remedies requires a prisoner to use "all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Jones v. Sposato*, No. 16-cv-5121, 2017 WL 4023135, at *4 (E.D.N.Y. Aug. 22, 2017) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "Untimely or otherwise procedurally defective administrative grievance[s] or appeal[]s" fail to satisfy PLRA's exhaustion requirements. *Riles v. Buchanan*, 656 Fed. Appx. 577, 579 (2d Cir. 2016) (quoting *Woodford*, 548 U.S. at 88-90). Consequently, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero v. County of Orange*, 467 F.3d 170 (2d Cir. 2006); *see Woodford,* 548 U.S. at 95 ("For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. . . . We are confident that the PLRA did not create such a toothless scheme.").

Plaintiff received a copy of the Inmate Handbook when he arrived at the NCCC on October 24, 2019. ECF No. 47 ¶ 19; ECF No. 46- 4. The Inmate Handbook provides a description of NCCC's Inmate Grievance procedure. *Id.* at 3-5. The NCCC Inmate Grievance

9

procedure requires inmates to complete a grievance form and deposit it into a secure box. *Id.* The grievance form must be submitted within five days of the complained event. *Id.* at 4. The forms are evaluated by members of the Grievance Unit. *Id.* Decisions about the grievances are made by the Grievance Coordinator and are provided to the inmate who can appeal the decision to the facility's CAO. *Id.* Inmates then have the option to appeal the decisions of CAO to the State Commissions on Corrections. *Id.*

Plaintiff asserts (without any supporting evidence) that following the altercation on December 20, 2019, he first attempted to "resolve this matter informally with staff by speaking with officers and participating in the Internal Affairs Investigation."[7] ECF No. 51 at 3. Plaintiff then filed his initial grievance (No. 027-02-20) on January 6, 2020. ECF No. 48 at 5; ECF No. 45-3 at 16 to 25 (NC 000052-61). This untimely submission was filed 17 days after the incident on December 20, 2019, and 12 days after deadline for such submission of such a grievance. *Id.* Therefore, Plaintiff failed to timely file his grievance in accordance with NCCC's procedures.

In this initial grievance, Plaintiff sought the remedy of resuming "contact visits." ECF No. 46-3 at 19 (NC 000055). He did not seek remedies of monetary damages now pending before the Court. *Id.* On January 9, 2020, the Grievance Investigator responded to Plaintiff's grievance and indicated that Plaintiff would remain on "booth visits" until his first thirty-day review by the facility's CAO. *Id.* at 17. Notably, Plaintiff did not appeal this decision to the

---

[7] Plaintiff correctly notes that the handbook does state, "if you attempt to resolve your complaint in an informal manner and later file a formal grievance, the time utilized in attempting to resolve the complaint informally will not be calculated into the grievance timetable." ECF No. 46-4 at 4. Plaintiff *now* requests Defendants produce his entire Internal Affairs Investigation. ECF No. 51 at 3. The Court denies this request to reopen discovery in a case that has been pending for over three years. Further, the Court notes that although such informal discussions could potentially extend the time for Plaintiff to file a grievance, they would not remedy the further exhaustion deficiencies of Plaintiff's claim. *See Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (finding that informal discussions were insufficient for exhaustion under the PLRA).

CAO. ECF No. 47 ¶ 26.

Due to Plaintiff's failure to timely file his grievance in accordance with NCCC's procedures, his failure to adequately request the remedies he now seeks, and, most importantly, his failure to appeal the subsequent decision, he did not properly exhaust his administrative remedies. *See, e.g.*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."); *Morrison v. Stefaniak,* 523 Fed. Appx. 51, 52 (2d Cir. 2013) (upholding dismissal because plaintiff failed to appeal the Inmate Grievance Resolution Committee's decision); *White v. State of New York*, No. 00 CIV 3434 (LMM)(AJP), 2002 WL 31235713, at *2 (S.D.N.Y. Oct. 3, 2002) ("Therefore, a prisoner must first exhaust his administrative remedies even where money damages is the only relief sought and such relief is unavailable through administrative grievance mechanisms."); *Marley v. United States*, No. 18 CV 3495 (EK)(RML), 2022 WL 1183330, at *5 (E.D.N.Y. Apr. 20, 2022) (finding that a claim was barred, as plaintiff did not comply with the grievance process), *report and recommendation adopted*, No. 18-CV-3495(EK)(RML), 2022 WL 1720432 (E.D.N.Y. May 27, 2022); *Angulo v. Nassau Cnty.,* 89 F. Supp. 3d 541, 551 (E.D.N.Y. March 6, 2015) (holding inmate's letter of complaint did not comply with correctional facility's grievance procedure and thus inmate failed to properly exhaust his administrative remedies); *Medina v. Nassau Cnty. Sherriff Dep't,* No. 11-CV-228 (JFB)(GRB), 2013 WL 4832803, at *5 (E.D.N.Y Sept. 10, 2013) (holding that plaintiff failed to exhaust remedies where grievances were deemed insufficient and plaintiff failed to supply necessary information, and plaintiff otherwise failed to appeal and grievances).

On February 10, 2020, Plaintiff filed another grievance form, No. 021-02-20 (ECF No. 46-3 at 12-15 (NC 000048-50)), in which again he challenged his booth visits. *See supra* Part

11

I.B. of this Report and Recommendation at 4. He indicated his acceptance of the Grievance Coordinator's determination and did not appeal his decision. ECF No. 46-3 at 13 (NC 000049). Therefore, this grievance is barred by the PLRA and also does not request the remedies he currently seeks.

### 2. Availability

In seeking to rebut Defendants' exhaustion argument, Plaintiff challenges the availability of filing grievances at the NCCC, arguing that during COVID-19 pandemic "lock-down" time in early 2020, he was unable to access the administrative process. ECF No. 52 at 3. The Court is unconvinced by this argument.

The PLRA contains a "textual exception to mandatory exhaustion" which states that the administrative remedies must be "available." *Riles v. Buchanan*, 656 Fed. Appx. 577 (2d Cir. 2016) (quoting *Ross v. Black*, 578 U.S. 632 (2016)). An administrative procedure is deemed unavailable when: (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) it is "so opaque that is becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60.

Plaintiff has failed to show that NCCC's grievance procedures were not "available" to him. There is no evidence to suggest that NCCC's corrections officers purposefully lost or refused to answer grievances or that Plaintiff was unaware of the appeals process. *Ruggiero*, 467 F.3d at 178 (holding that inmate had not exhausted his administrative remedies when he did not claim "that he was unaware of the grievance procedures contained within [the Inmate Handbook] or that he did not understand those procedures"); *see Williams v. Priatno,* 829 F3d 118, 124 (2d

Cir. 2016). Most importantly, Defendants have submitted a Declaration of Investigator Sergeant Victoria Harden, who is the Inmate Grievance Coordinator at the NCCC. ECF No. 52-1. Her declaration states that the Grievance Unit was "functioning, incarcerated individuals were filing grievances . . . and the Grievance Unit was investigating those filings" during March and April 2020. *Id.* The declaration provides additional methods whereby Plaintiff could have submitted grievances during this time period that were apparently not utilized. *Id.* ¶ 5. Therefore, the Court does not find that the grievance procedures were unavailable to Plaintiff.

In addition, Plaintiff has not demonstrated the existence of special circumstances to warrant the failure to exhaust administrative remedies. Special circumstances can include where Plaintiff acted pursuant to reasonable interpretations of the procedures which prevented the exhaustion. *Ruggiero*, 467 F.3d at 175 (describing "special circumstances" as "a reasonable misunderstanding of the grievance procedures justifying the prisoner's failure to comply with the exhaustion requirement"); *Hartry v. Cnty. of Suffolk,* 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010) ("Among the circumstances potentially qualifying as 'special' under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute cannot be grieved.").

Therefore, Plaintiff's claims are barred by the PLRA.

**B. Additional Defenses**

Defendants also seek summary judgment by asserting that Plaintiff's claims should not proceed as he has not attributed any specific conduct to the named defendants and that the Defendants were not deliberately indifferent. ECF No. 48. However, based on the foregoing recommendation that the Court grant the motion for summary judgment due to Plaintiff's failure

13

to exhaust remedies under the PLRA, "the Court need not address [D]efendants' other arguments." *Brady v. Top Ships Inc.*, No. 17-CV-4987, 2019 WL 3553999, at *17 (E.D.N.Y. Aug. 5, 2019), *aff'd sub nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020).

## IV.  CONCLUSION

For the above reasons, the undersigned recommends that Judge Brown grant Defendants' motion for summary judgment.

## V.  OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Brown. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
      May 26, 2023

**SO ORDERED**:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge

14